Church, Ch. J.
The action was brought for the settlement of partnership accounts between the plaintiffs intestate and the defendant’s testator. The parties transacted the business of manufacturing barley-malt, from 1851 to the 13th day of November, 1855, under the name of Johnson & Hartshorne, and from that time until the 15th day of June, 1861, under the name of Bichard Hartshorne, when Johnson died. The accounts of these partnerships, together with an interest in another partnership which the parties had for a portion of the time, were involved in the litigation before the referee, and the judgment entered upon his findings has been appealed to this court. We can only determine the correctness of the conclusions of law from the facts found by the referee. The counsel for the appellant presents several points for our consideration. The allowance of $1,500, credited in the account of the plaintiffs intestate, for the rent of the malt-house in Forty-ninth street, from the 15th day of June, 1861, the time of his death, to the first of November following, is claimed to be erroneous.
*176 The lease was made in 1858, from Johnson to Hartshorne, for five years, for the use of the firm, and it is claimed that it ended at the dissolution. The case cited of Tasker v. Shepherd (6 H. & N., 581) is riot precisely in point. The plaintiff engaged his services as sole agent for a firm for four and a half years. Before the expiration of the time one of the partners died, and the court held that the contract must be construed as conditioned that all the parties lived, and that the plaintiff could not recover for services after the death of one of the partners. , The rule would be different, I apprehend, with a lease from a third person of property for the firm which had not expired at the time of dissolution by the death of one of the partners. In such a case the lease would constitute a part of the assets of the firm, and might be sold or disposed of as property. The implication arising upon a contract dependent upon personal skill, or the continuance of the lives of persons engaged in a copartnership, would not arise in contracts relative to property. If this lease had been taken from a person not connected with the partnership, I should have no doubt that a dissolution by the death of a partner would not affect it. Here the business was done in the name of Hartshorne, and the lease was made by Johnson to him for the purposes of the firm, as found by the referee, and I am inclined to think, in such a case, that it is subject to the continuance of the firm, and that upon a dissolution, by the death of either partner, the lease terminates. In Collyer on Partnerships the rule is laid down broadly, that upon a dissolution all leases, held of an individual partner during the continuance of the partnership by the members of the firm as partners are determined, and the lessor may enter without giving notice to quit. The authorities cited (Doe v. Miles, 1 Stark., 181, and Doe v. Black, 8 C. & P., 464), while they may ' not sustain unqualifiedly the general proposition of the' text, do hold that a lease by one partner to the partnership is determined by a dissolution, and I do not see why, upon principle, this rule is not sound. The present case will illustrate it. These persons entered into partnership for five years, and one *177 of them leased to the - firm a building for the use of the firm for the period for which the partnership was to continue. It must be presumed that both parties contemplated the continuance of the firm for the five years, and that it was intended to cover the same period by the lease. The lease and the partnership were to be coextensive, and the proper construction of the lease is that it continued during the existence of the partnership, and no longer. This would effectuate the clear intention of the parties, and is a necessary implication from the whole transaction. But this construction is not conclusive upon the correctness of the credit. I infer from the findings of the referee that the building could not be actually employed for malting during the whole year; that when Johnson died in April, the malting season was over, and consequently that the firm had received, at that time, the substantial benefit of the use of the building for the year, and that between the time of Johnson’s death and the first of November, when the plaintiff took possession, the building was of no value for the purposes for which it was designed. Under these circumstances, it is just and equitable that the rent should be credited until that time. The firm had the beneficial use of it for that period.
The next and most important question presented relates to charges of interest, both in favor of Johnson upon his credits and against Hartshorne upon his debits. There is and can be no fixed rule in settling partnership accounts in respect to interest. Its allowance must necessarily depend upon the circumstances of each case. Ordinarily, interest is not allowed after dissolution upon capital as such, although by the articles it is allowed during the partnership. ( Watney v. Wells, 2 Chy. Appeal [L. R.], 250.) The reason for this general rule is obvious. During the partnership all the partners have the benefit of the capital to make profits, while upon dissolution this benefit ceases. But where the surviving partner unreasonably delays the payment of capital, interest will be allowed. (7 Dana, 201; 1 McCord Ch., 213.) So it has been held that the period of dissolution is *178 the proper time to make a rest and adjust the balance of the partnership account, and the partner against whom the balance is found is chargeable with interest. (Collyer on Part., § 335, note 1; 2 J. Ch. R., 209.) In Beacham v. Eckford (2 Sand. Ch. R., 116), the vice-chancellor insists that no such rule exists, and reviews the above and other cases, and says that the allowance or refusal of interest in such cases depends upon the circumstances of each. Hr. Justice Story, in Dexter v. Arnold (3 Mason, 284), remarked: “ Interest is not allowed upon partnership accounts generally until after a balance is struck between the parties.”
The circumstance that the surviving partner has charge of the books and knows the state of the accounts has been regarded as sufficient to charge him with interest. (7 Dana, supra.)
It has been laid down as a general rule that a surviving partner is entitled to interest when in advance and chargeable with it when in funds. (1 Hoff. Ch. R., 68.) So whether or not the surviving partner has used the money in violation of his duty, or made profits on it, or other circumstances of good or bad faith have a bearing upon the question of interest. (Collyer on Part., § 336, note 3.)
Courts of equity regard stated accounts between the partners as conclusive, unless palpable error or fraud can be shown. (Story on Part., § 349.)
In this case the referee made up the accounts upon the principle of debtor and creditor, and, according to the general usage of merchants, has charged and credited interest upon the respective items of each partner, and he has found a variety of facts tending to justify this mode of accounting in this case. The business of the firm was generally profitable, and I infer that there was sufficient firm property to pay the debts and reimburse all advances of capital and interest. On the 2d day of September, 1862, the surviving partner ren-' dered a statement to the plaintiff, called a trial balance, in which Johnson was credited with the sum of $17,654.51 and Hartshorne debited the sum of $17,355.37, in which were *179 included items of interest which it seems had been added by the surviving partner himself. On that day he transferred to the plaintiff real estate belonging to the firm, which was received at the price of §28,000, one-half of which sum was credited to Hartshorne and charged to Johnson, but no other account was ever rendered by Hartshorne during his life, although frequently called upon to render an account, and promising to do so. The referee also finds that he refused to allow the plaintiff’s book-keeper to examine the accounts; that he deposited the money of the firm in the name of a new firm which he had formed, and to some extent used the firm funds indiscriminately with his own. It appears that he paid the debts of the firm and paid some money to the plaintiff from time to time, but that his debit increased from §1,000 to §1,500 a year until his death, which occurred in 1867. From these and other facts found the referee finds, as a conclusion of law, that the plaintiff’s intestate was entitled to annual interest upon balances in his favor, and that the defendant’s testator was chargeable with like interest upon balances against him, although, in making up the account, but one rest was in fact made in the plaintiff’s account. The interest is calculated to November 13, 1862, added to the principal and then calculated to November 13, 1869. The allowance of compound interest to the plaintiff is erroneous. There is no principle that will justify it. The most that can be claimed is, that it was a debt due which ought to have been paid, and was therefore entitled to draw simple interest, and the conversion of the assets might have been accelerated by proceedings on the part of the plaintiff at any time. The defendant’s debit stands upon a different footing. Compound interest may be charged in cases of bad faith, refusal to account, and private use of money, and the question of its propriety was a question of fact for the referee, whose decision is conclusive. There were facts found from which the referee might conclude to make this charge. (2 Kent Com., 231, note; Collyer on Part., § 336, note 3.)
There is one item of interest charged against the defendant *180 which from the findings of fact is an error of law, and that is the interest on $2,000 which the referee finds that the surviving partner retained to await the result of a litigation upon a partnership claim and which was paid to satisfy the same.
The defence appears to have been made in good faith, and the surviving partner was justified in retaining the amount necessary to pay it, and the referee finds that he made no profit on the money. The mere circumstance of mingling with his own, the trust money, is not sufficient to charge the trustee with interest, but there must be a úse of it, in violation of the trust. (2 J. Ch. R., 209.)
Without intending to adopt the mode of making up these accounts as a rule, there are no other questions of law in the case which we can review. The surviving partner was not entitled to commissions. His services in winding up the business are regarded the same as during the partnership. (Collyer on Part., § 199, note 3; 3 Kent, 74; Story on Part., § 331.)
The judgment must be reversed and a new trial ordered unless the plaintiff stipulates to modify the judgment in accordance with this opinion, which may be agreed upon, or settled by the court upon application, and if so modified the judgment affirmed, without costs to either party as against the other in this court.
All concur.
Judgment accordingly.